Filed 5/15/14  Moore v. Moore CA2/3

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| TERRY MOORE, | B244913 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. YP011627) |
| v. | |
| RICHARD MOORE, as Trustee, etc., | |
| Defendant and Respondent. | |

APPEAL from an order of the Superior Court of Los Angeles County, Dudley W. Gray II, Judge.  Affirmed.

Terry Moore, in pro. per., for Plaintiff and Appellant

Robert A. Waddell for Defendant and Respondent.

Plaintiff and appellant Terry Moore (Terry), in propria persona, appeals an April 4, 2012 order settling a trust accounting for the period spanning September 1, 2003 to December 6, 2011.

We conclude Terry has not met his burden as the appellant to demonstrate prejudicial error and affirm the order.

**FACTUAL AND PROCEDURAL BACKGROUND**

1. *Facts.*

Mike Moore (decedent) died testate on December 15, 1992. His will was admitted to probate on July 27, 1993. Richard Moore (trustee) is the trustee of decedent's trust, which was established by decedent's will.

Terry and his sister Daphne Gail Moore Warner are decedent's children. Decedent provided for them to receive distributions from the Trust based on their earnings, as follow: "At the end of each calendar year following my death, my children shall submit to my said trustee tax returns, certified by a certified public accountant, showing their gross income for said year. My Trustee shall, within thirty days of receipt of these certified tax returns, disburse from the trust to my daughter Daphne Gail Moore the sum of ONE DOLLAR ($1.00) for each dollar she has earned during the preceding calendar year and for my son Terry Lynn Moore, the sum of FIFTY CENTS ($0.50) for each dollar he has earned during the preceding calendar year."

2. *Proceedings.*

a. *The December 14, 2011 hearing.*

On December 14, 2011, the parties were present in court on a petition by Terry to compel payment pursuant to tax returns that he submitted. The tax returns dated back nine years. Although Terry claimed to have earned $35,000 per year working as a neighborhood mechanic, he had no business records to support his claimed earnings.

The trial court ruled "the burden would be on [Terry] to prove the legitimacy of those tax returns. I don't believe they're legitimate. There's just insufficient evidence. [¶] And then more specifically, there's no documentation to support it. And then secondly, the fact that the passage of time has gone by tends to suggest that it's not

2

legitimate.  [¶]  And to the extent that you were saying that you did that because you thought you were going to keep the [real] property in lieu is not believable."

Thus, the trial court denied Moore's distribution request but added, "if he submits more current, verifiable returns then, of course, he would be entitled to his legitimate payment."

b. *The February 1, 2012 hearing.*

On February 1, 2012, the parties were back in court.

At the hearing, Terry raised an issue with respect to the trustee's having borrowed $28,000 from the trust.

In response, the trustee's attorney stated:  "[The trustee] lent lots and lots of money which was reimbursed to him, and somehow he got it in his head that he could borrow money from the trust since he lent the trust so much money.  All the money, of course, is reflected in the accounting, and it's all been paid back to the trust with interest at much more than market rate.  [¶]  [The trustee] now understands after my preparing the trust that we don't borrow money from trusts when you're the trustee, but it has all been paid back, and [Terry] and I agree that the money has been paid back, but it bothers him that he borrowed it in the first place."

The trial court then asked Terry, "What do you want to have happen?"  Terry did not request removal of the trustee.  He simply reiterated his request that he be paid based on his earnings as shown on the tax returns he submitted, and asserted the trust owed him about $21,000.

The trial court stated, "you will get money from the trust when you get a regular job that's verifiable."  The trial court explained, "there was no way to verify the representations that you made.  There needs to be some sort of proof."

Terry admittedly lacked any proof of his earnings.  He had no receipts, no canceled checks and no documentation of his alleged earnings as a mechanic.  Terry offered to supply the court with his customers' names and phone numbers.  The trial court declined, stating "Judges don't call."

c. *The April 4, 2012 order*.

Following the February 1, 2012 hearing on the trustee's accounting, on April 4, 2012, the trial court issued an order settling trust accounting from September 1, 2003 to December 6, 2011. The April 4, 2012 order is the subject of this appeal.

The order provides in pertinent part: Daphne was entitled to distribution from the trust in the amount of one dollar for each dollar earned in the preceding year. As for Terry, he was entitled to distribution from the trust in the amount of "$0.50 for each dollar he has earned during the preceding calendar year."

On October 1, 2012, Terry filed notice of appeal, specifying the April 4, 2012 order settling the trustee's accounting.[1][2]

## CONTENTIONS

Terry's basic contention is that he is entitled to distribution from the trust, based on 50 percent of the earnings set forth in his tax returns.

## DISCUSSION

1. *Trial court made a credibility determination that Terry had not shown any earnings during the relevant period.*

We begin with the premise that the trial court was not required to believe Terry and, sitting as trier of fact, had the power and the right to not do so. (See *In re Marriage of Greenberg* (2011) 194 Cal.App.4th 1095, 1099.) We do not judge credibility on appeal. An adverse factual finding is a poor platform upon which to predicate reversible error. (*Id*. at p. 1097.) "We sit as a court [of law] to review errors of law and not [claimed] errors of fact." (*Achen v. Pepsi-Cola Bottling Co*. (1951) 105 Cal.App.2d 113, 125.)

---

[1]    An order settling the account of a fiduciary is appealable. (Prob. Code, § 1300, subd. (b).)

[2]    It appears the notice of appeal, filed within 180 days of the April 4, 2012 order, is timely, in that there is no indication of service of notice of entry of the April 4, 2012 order by a party or by the clerk. (Cal. Rules of Court, rule 8.104(a)(1).)

4

Here, the trustee's attorney questioned the validity of Terry's claim he had been earning $35,000 annually, over a period of years. "At no time did he ever say I made a nickel and I want my money. Now after all of that litigation is completed, he submits these returns and says I made $35,000 in each year. And we say, come on. If you're going to permit him to do that, then why not say I made $250,000 and, please, give me the balance in the trust which is about [$112,000] . . . . [¶] So I do think the court has to look at it and say the intent was that you actually earn the money and that the tax returns are the proof that you earned the money. [¶] But just throwing a number on a return that we don't even know if it's been filed, we certainly don't think the taxes have been paid if it has been filed. And I think we owe it to the other beneficiary, Daphne Blanco, to not just throw money at Terry Moore and therefore, perhaps, if this is successful, because nobody can go behind the returns, then he can submit a return for this year stating he made enough to deplete the trust and Daphne Blanco is, therefore, defeated in her claims for income in the future which are verified as a W-2 [wage]. [¶] So that's the trust position. And as the person charged by his uncle to watch this money, he believes that there should be a little bit of testimony at least from Terry Moore as to how he came up with these numbers, why the returns weren't submitted for all these years, and why he did not do it initially rather than filing all this litigation against the trust and the trustee."

The record reflects the oldest purported tax return was from 2002, nine years earlier. The trial court questioned why Terry had waited so long, observing, "It makes little or no sense to think that a man who is only making $35,00 a year . . . wouldn't want to increase [his] income by 50 percent."

Terry asserted that when he was evicted from his property in 2008, his records were destroyed. He had no business license. He just worked as a neighborhood mechanic, working on people's cars. At present, he was on disability and living in his vehicle. He last worked for three days at a Christmas tree lot, distributing Christmas trees. In order to submit a request for payment to the trustee, Terry went to a C.P.A. he found in the phone book. As proof of his alleged $35,000 annual income, he gave the accountant a ledger, from which the accountant compiled the tax returns. The accountant

5

prepared the returns based on information supplied by Terry. Terry lacked any banking information to support his claimed earnings *"because 98 percent of my things were paid in cash,"* and for even the remaining 2 percent, he had no documentary evidence. (Italics added.)

On this record, the trial court, sitting as the trier of fact, properly found the tax returns submitted by Terry were not "legitimate. There's just insufficient evidence. [¶] And then more specifically, there's no documentation to support it. And then secondly, the fact that the passage of time has gone by tends to suggest that it's not legitimate. [¶] And to the extent that you were saying that you did that because you thought you were going to keep the [real] property in lieu is not believable."

The trial court advised Terry, "you will get money from the trust when you get a regular job that's verifiable, and then they will give you – whatever you earn they will add 50 percent." There was no error.

2. *Trustee's borrowing money from the trust.*

Terry's opening brief refers to the trustee's having borrowed $28,000 from the trust (Prob. Code, § 16004 [a trustee should not use or deal with trust property for his own profit]), but Terry presents no argument, other than he should be paid distribution from the trust based on his earnings.

As indicated, the trial court addressed this issue with the trustee's attorney, who advised the court the trustee had repaid the $28,000 with interest, and that the trustee had been counseled to refrain from such activity in the future. Terry did not dispute that the money had been repaid. When asked, "What do you want to have happen?", Terry merely reiterated his assertion that he was owed $21,000 based on his tax returns.

In sum, Terry has not demonstrated any error in the trial court's April 4, 2012 order settling the trust accounting.

## DISPOSITION

The April 4, 2012 order is affirmed. The parties shall bear their respective costs on appeal.

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

KLEIN, P. J.

We concur:

KITCHING, J.

ALDRICH, J.

7